TRINITY UNIVERSAL INSURANCE
CO., Appellant,

v.

Bobby R. FULLER and Fuller & Peyton
Insurance Agency, Appellees.

No. 18581.

Court of Civil Appeals of Texas,
Dallas.

May 15, 1975.

Rehearing Denied June 5, 1975.

Larry L. Gollaher, Thompson, Coe, Cousins & Irons, Dallas, for appellant.

Robert H. Frost, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellees.

AKIN, Justice.

This case concerns the liability of an insurance agent to his principal for failure to follow an instruction to obtain an endorsement reducing the coverage of a policy of fire insurance. The suit was originally brought by the insured. Hoover & Sons, Inc. sued Trinity Universal Insurance Company on a fire insurance policy in the amount of $25,000 for a loss occurring on December 10, 1972. Trinity admitted it was liable to the insured in the amount of $10,000 but denied any further liability on the ground that Trinity had instructed its agent, Fuller & Peyton Insurance Agency prior to the fire to reduce the coverage on the building from $25,000 to $10,000. Trinity filed a third party action against its agent Fuller for damages alleging that Fuller's failure to comply with Trinity's instruction to reduce the coverage was a breach of Fuller's contract with Trinity. This breach, Trinity contends, resulted in its loss in excess of $10,000. In the alternative, Trinity alleged that Fuller was negligent in failing to obtain the insured's signature on the reduction endorsement, thereby proximately causing Trinity to suffer the additional loss of $14,000.

The pertinent jury findings are as follows: that the loss sustained by virtue of the fire was $24,000; that a reasonable time for Fuller to comply with Trinity's instructions to reduce coverage would have been on or before December 4, 1972; that Fuller's failure to comply with Trinity's instructions was negligence; that such negligence of Fuller was a proximate cause of the loss sustained by Trinity in excess of $10,000; that the failure of Trinity to cancel the entire policy in question prior to the fire was negligence; that such negligence on the part of Trinity was a proximate cause of Trinity's loss in excess of $10,000; and that Trinity did not waive its instructions to Fuller to obtain the insured's signature on an endorsement reducing the coverage on the building to $10,000. Based upon these findings, the trial court entered judgment in favor of the insured in the amount of $24,000 and denied Trinity recovery against Fuller on its third party action.

Trinity brings this appeal from the judgment denying it recovery against Fuller.

Two questions are presented by this appeal: (1) Is Trinity entitled to judgment under the evidence here for breach of contract as a matter of law? (2) Is Trinity barred from recovery because it failed to mitigate damages? We answer the first question in the affirmative and the second in the negative and, therefore, reverse and render the judgment of the trial court.

## FACTS

Without any previous knowledge by Trinity, agent Fuller issued Trinity's policy insuring the building of Hoover & Sons for $25,000. After Trinity inspected the premises, Trinity prepared an endorsement reducing coverage to $10,000 and instructed agent Fuller to obtain the signature of the insured on the endorsement. Fuller testified that he received the endorsement reducing Trinity's coverage from $25,000 to $10,000 shortly after June 30, 1972. Agent Fuller further stated that he understood upon receipt of the reduction endorsement that Trinity expected him to obtain the signature of the insured and return the signed endorsement to Trinity. Fuller admitted failure to follow these instructions and on September 20, 1972, he received the first of four letters from Trinity requesting the signed endorsement. Trinity made the same request of Fuller on October 22, 1972, November 3, 1972, and December 1, 1972, but according to agent Fuller he "just could not find time to get the endorsement signed by the insured and return it to Trinity." At no time did Fuller advise Trinity that he had not obtained the insured's signature on the endorsement or that he would not do so. Fuller admitted further that he did not expect Trinity to obtain the insured's signature directly, since reduction endorsements are always handled by the agent. It was

not until after the fire occurred on December 10, 1972, that agent Fuller finally complied with Trinity's instructions by sending the endorsement to the insured requesting its signature. The insured, of course, did not sign the endorsement; hence, this litigation ensued.

## BREACH OF CONTRACT

Based upon these facts, Trinity argues that the trial court erred in failing to render judgment for it against agent Fuller because the verdict of the jury and the uncontroverted evidence established agent Fuller's breach of contract as a matter of law. The pertinent part of the agency contract between Trinity and agent Fuller provides:

> The agent is authorized to solicit lines of insurance specified by the company for the territory above described, and to countersign, issue, renew and consent in writing to the transfer of insurance policies when duly authenticated, and to collect premiums for transmission to the company, and to perform generally the duties of an agent as herein outlined and in such manner as shall best promote the interests of the company, being governed in all respects by the company's manuals and subject to the rules and regulations of said company *and to such instruction as may from time to time be given by its authorized representative.* [Emphasis added.]

This contract clearly imposed upon Fuller the duty to carry out instructions given by Trinity. Trinity contends that agent Fuller violated this contract in failing to procure the signature of the insured on the reduction endorsement as requested. We agree. The undisputed evidence established that Fuller failed to carry out this instruction. The jury found that Fuller was given a reasonable time to respond to Trinity's instruction and that this failure to follow instructions caused Trinity to sustain a loss in excess of $10,000.

A similar fact situation was presented in National Automobile and Casualty Insurance Co. v. Allco Insurance Agency, 403 S.W.2d 174 (Tex.Civ.App.—Austin 1966, no writ). In that case, as here, an insurer sought indemnity from its agent for an amount paid to satisfy a claim on an insurance policy because the agent failed to follow the insurer's instructions to cancel the policy before liability upon it arose. The court stated that if the agent had a duty to follow the instructions to cancel the policy "then it was the result of contractual relations between the parties and a breach of such duty would be a breach of contract." *Id.* at 177. *See also,* Cagle v. Commercial Standard Insurance Co., 427 S.W.2d 939 (Tex.Civ.App.—Austin 1968, no writ).

## MITIGATION OF DAMAGES

Fuller argues that Trinity could have cancelled the insurance policy in question as well as Fuller, and, therefore, concludes that Fuller is relieved of liability. Fuller bases this assertion on the jury's findings that Trinity's negligence was the proximate cause of its loss. Fuller's contention is without merit because Trinity had no duty to mitigate damages here. We hold that Trinity's right to cancel or reduce the limits of the policy is no defense for the agent in an action for breach of contract by Trinity. The jury's responses to these special issues could be said to constitute contributory negligence on the part of Trinity. Contributory negligence, however, is not a defense to a breach of contract. Westchester Fire Insurance Co. v. Bollin, 106 S.C. 45, 90 S.E. 327 (1916); Washington v. Mechanics & Traders Insurance Co., 174 Okla. 478, 50 P.2d 621 (1935); American Insurance Co. v. Martinek, 203 Mich. 108, 168 N.W. 982 (1918); St. Paul Fire & Marine Insurance Co. v. Bigger, 105 Kan. 311, 182 P. 184 (1919); Phoenix Insurance Co. v. Heath, 90 Utah 187, 61 P.2d 308 (1936); Hanover Insurance Co. v. St. Paul Fire & Marine Insurance Co., 359 F.Supp. 591 (W.D.La.1973).

■ Fuller argues that the contributory negligence finding on the part of Trinity has the same effect as establishing the defense of avoidable consequences. We do not agree. Even if Fuller's position was correct, he could not establish the defense of avoidable consequences. The Texas Supreme Court in Walker v. Salt Flat Water Co., 128 Tex. 140, 96 S.W.2d 231, 232 (1936) stated the rule as follows:

> Where a party is entitled to the benefits of a contract and can save himself from damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty to incur such expense and make such exertions; and in such instances he can only charge the party in default with such damages as he could not have prevented with reasonable exertions and expense; *but where the party in default was in duty bound to prevent damages, and had equal opportunity with the person injured for performance, and equal knowledge of the consequences of nonperformance, he cannot, while the contract is in force and effect, be heard to say that the plaintiff might have performed for him, and thus avoided such damages.* [Emphasis added.]

It was Fuller's duty to reduce the coverage on the building and Fuller had an equal if not greater opportunity than Trinity to effect that reduction or to cancel the policy. Fuller knew that Trinity was relying on him to take that action. Since Fuller failed in this duty, he cannot now look to Trinity for relief from his own breach of duty.

■ The doctrine of avoidable consequences arises only if the victim of the wrongdoer's act has *knowledge* of the fact which make avoidance of the consequence necessary, and if the damages can be avoided with only slight expense and reasonable effort. Here, there is no evidence that Trinity knew that the coverage had not been reduced by Fuller. In fact, Fuller himself testified that he never advised Trinity that he had not obtained the insured's signature on the reduction endorsement, or that he would not do so. Without such knowledge, Trinity had no duty to avoid the consequences by reducing or cancelling the policy. Indeed, Trinity had a right to rely on its agent to carry out his duties under the agency contract. The cases cited to us by Fuller are not in point for the reason that in each case there was *actual knowledge* of the wrongdoer's breach of contract prior to the occurrence of the damage. The controlling rule is stated by Mr. Justice Pope in Polis v. Alford, 273 S.W.2d 79, 80 (Tex.Civ.App.—San Antonio 1954, writ ref'd), as follows:

> Alford had no prior notice, nor any reason to believe that Polis would violate his contract and fail to pay the flat rate. Until February 1st Polis could have paid the flat rate, and until that date Alford could reasonably assume that Polis would comply with his agreement rather than breach it. . . .
>
> .   .   .   .   .
>
> While Alford should reasonably avoid the consequences of a breach, he is not bound to avoid the breach itself. 5 Williston on Contracts § 1353 (1961).

*See also,* Western Union Telegraph Co. v. Federolf, 145 S.W. 314, 316 (Tex.Civ.App.—San Antonio 1912, no writ); Otto Goedecke, Inc. v. Henderson, 388 S.W.2d 728, 730 (Tex. Civ.App.—Amarillo 1965, writ ref'd n. r. e.). We conclude that no duty existed upon Trinity to cancel or reduce the policy coverage, and, therefore, Trinity is entitled to its damages occasioned by Fuller's breach of the agency contract.

We reverse the judgment of the trial court and render judgment for Trinity and against the partnership of Fuller & Peyton Insurance Agency for the sum of $14,000, with interest from May 7, 1973, at the rate of six percent per annum and for all costs.

Reversed and rendered.